UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

NO. 3:17-CV-00820-CWR-LRA

## Gluckstadt Holdings, LLC
Appellant

v.

## VCR I, LLC
Debtor - Appellee

---

### BRIEF OF APPELLANT

---

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Case No. 12-02009-EE

Edward Ellington, United States Bankruptcy Judge

CRAIG M. GENO
MISSISSIPPI BAR NO. 4793
JARRET P. NICHOLS
MISSISSIPPI BAR NO. 99426

Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com - E-Mail Address
jnichols@cmgenolaw.com - E-Mail Address

## CERTIFICATE OF INTERESTED PERSONS

The following is a list of all judges, attorneys, persons, associations, firms, partnerships, corporations, and other legal entities that have an interst in the outcome of this case, including the parent corporation and any publicly held company that owns 10 percent or more of a party's stock:

1. Hon. Edward Ellington, U.S. Bankruptcy Judge, S.D. of Mississippi;

2. Derek Henderson, Chapter 7 Trustee - Appellee

3. VCR I, LLC - Debtor/Appellee

4. Gluckstadt Holdings, LLC - Appellant

5. Craig M. Geno, Law Offices of Craig M. Geno - Counsel for Appellant

6. Jarret P. Nichols, Law Offices of Craig M. Geno - Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests that this Court render its decision with oral argument in that, among other reasons, there is no precedent in the Fifth Circuit directly on point.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    Facts and Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    1. The Order should be enforced – and enforced specifically as to the parties to the Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    2. GH has standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    3. Equitable Considerations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**Cases**

*Cotton v. Banksouth (In re Cotton)*; 136 B.R. 888, 890 (M.D.Ga. 1992); reversed on other grounds, 992 F.2d. 311 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Begier v. American Express, Inc.* (*In re American International Airways, Inc.*), 75 B.R. 1023, 1023 (Bankr. E.D.Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*PRLP 2011 Holdings LLC v. Manuel Mediavilla, Inc., et al.*, 568 B.R. 551 (1st Cir. BAP 2017)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18, 20-23, 25, 27

*Burtch v. Avnet, Inc.*, 527 B.R. 150 (D.C. Del. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Equity Mgmt. II Corp. v. Carroll Canyon Assoc.* (*In re: Carroll Canyon Assoc.*), 73 B.R. 236, 238 (S.D.Miss. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Holwerda*, 428 B.R. 730 (Bankr. Mich. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-26

*In re Hyperion Foundation, Inc.* 2009 WL 3633878 (S.D.Miss. 2009) . . . . . . . . . . . . 16, 18, 25

*In re Managed Storage International, Inc.*, 2012 WL 5921723 (Bankr. D. Del. 2012) . . . . 12-13

*Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* (*In re Little Creek Dev. Co.*), 779 F.2d 1068, 1073 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14, 23, 27

*Phoenix Piccadilly Ltd.*, 849 F.2d 1383 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 5, 14, 23, 27

*In re United Shipping*, No. 4-88-533, 1989 WL 12723 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*White v. C.B. Hannay Co.* (*In re Lyons Transportation Lines, Inc.*), 163 B.R. 474, 476 (Bankr. W.D.Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## STATEMENT OF JURISDICTION

The Court possesses appellate jurisdiction of the Bankruptcy Court's final order pursuant to 28. U.S.C. § 158(a)(1).

## STATEMENT OF THE ISSUE

1. The Order (as determined in this brief) should be enforced - and enforced specifically as to the parties to the Order.

2. GH has standing.  In the event this Honorable Court desires to review the standing issues (not appealed by the Trustee), GH submits this portion of the brief on that issue.

## STANDARD OF REVIEW

A district court reviews the factual findings of a bankruptcy judge using a "clearly erroneous" standard.  A district court reviews a bankruptcy judge's conclusions of law de novo.

## STATEMENT OF THE CASE

*A.    Introduction*

GH asserts a binding agreement was reached between the Debtor-in-possession (the Trustee's predecessor), BankPlus, Mark S. Bounds Realty Partners, Inc. ("Bounds Realty"), the Mississippi Department of Transportation ("MDOT"), and Gluckstadt Holdings, LLC ("GH") that provided substantial benefit and made a substantial contribution to the overall Chapter 11 case at that point - and now the liquidation at this point - by allowing the eminent domain state court case to go forward,  allowing BankPlus to be paid in full, allowing Bounds Realty to be paid in full and, most importantly, eliminating the possibility that this case would be dismissed as a bad faith filing, single-asset real estate case under the rule of *Phoenix Piccadilly Ltd.*, 849 F.2d 1383 (11th Cir. 1988), and *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* (*In re Little Creek Dev. Co.*), 779 F.2d 1068, 1073 (5th Cir. 1986).  What remained to be done was for the

Trustee to file a motion to sell the affected real estate, under the terms reached with the Debtor-in-possession and subject to objections of creditors not participating in the agreed order of March 1, 2013 (the "Order") (T-2)[1].  That was never done by the Debtor-in-possession, and the Trustee has similarly not complied with the agreement.

B.    Facts and Background

Substantially all the testimony at the trial from the witnesses was submitted without objection, and, for the most part, it has been submitted without contradiction - by either side. The background leading up to the filing of the bankruptcy case was provided by Gregory M. Johnston ("Mr. Johnston"), an attorney who had been engaged by Bounds Realty to prosecute a breach of contract claim of Bounds Realty against VCR I, LLC (the "Debtor").  Mr. Johnston obtained a summary judgment in favor of Bounds Realty against the Debtor (TR, pp 34, 35)[2]. When the judgment was not collected amicably, Mr. Johnston caused a writ of execution to be issued (TR, p 35).  Mr. Johnston then learned that GH (or its principals) had previously had some interest in the real property that was subject to the summary judgment lien of Bounds Realty (TR, pp 37, 38).  These discussions led to an agreement by GH to pay $2,500,000.00 for substantially all of the assets that were subject to the writ of execution at the sheriff's sale, which would have included all of the Debtor's entire thirty-nine (39) acre tract.  (TR, p 39).  Mr. Johnston was advised that the Debtor had filed bankruptcy, but he went forward and had the sheriff's deputy "call" the sale, which resulted in a bid from GH for $2.5 million dollars.  (TR, pp 39, 40).  The bid of GH was the only bid received (TR, p 40).  Mr. Johnston was concerned about the

---

[1] Trial Exhibits will be referred to as "T-_____" for Trustee's exhibits and "GH-_____" for Gluckstadt Holdings' exhibits.

[2] References to the trial transcript shall be designated as "TR, pp ___.

automatic stay as a result of the bankruptcy filing by the Debtor, but returned to the sheriff's sale

the next day and had it finalized, but he stopped short of exchanging funds and issuing a deed to

the property.  (TR, pp 40, 41).

Mr. Johnston further testified that after the bankruptcy was filed Bounds Realty and GH

worked together to try to come up a solution that would have been fair for "everybody" involved

in the bankruptcy.  (TR, p 42).  He further testified that only GH came forward with any promise

to pay any money in the bankruptcy as part of the settlement.  (TR, p 44).

Robert McRaney was the lawyer for the Debtor during most of its bankruptcy Chapter 11

history.  Mr. McRaney testified that he experienced a "lot of problems" with his client, that it had

no cash available to pay adequate protection payments, no income, no employees, no assets other

than its real property (TR, pp 49, 50).  He also testified that he was concerned about defending

the motion to dismiss and, additionally, he was concerned about the future of the bankruptcy case

because of a May deadline when he had to accomplish certain filings pursuant to an agreement he

had reached with the U.S. Trustee (TR, p 50).  His testimony was consistent with the Order.  He

even testified that the proposal GH made that resulted in the Order was a "no-brainer" for his

client and that he still believed that on the date of the trial of the Motion to Dismiss.  (TR, p 52).

Mr. McRaney was clear that he never filed the sale motion that the Order contemplated (TR, p

54).  He also testified that the Bounds Realty motion to dismiss was "noticed" to the entire

creditor body and that his objection on behalf of the Debtor was the only objection that was filed.

(TR, p 57).  Derek Henderson ("Mr. Henderson" or the "Trustee") is the Chapter 7 Trustee in this

case.  He testified that Chapter 7 Trustees succeed to the rights, duties, obligations and interests

of the former Chapter 11 debtor (TR, p 22).  Mr. Henderson agreed that the motion to dismiss

was noticed to all creditors and only one objection was filed - that by the Debtor.  (TR, p 22, 23).

Mr. Henderson also testified that neither the Debtor nor he filed the sale motion called for in the Order (TR, pp 25, 26).

According to Mr. Henderson, as a result of the Order that was entered: BankPlus was paid in full; the deed of trust of BankPlus was satisfied and cancelled; Bounds Realty was paid in full; the judgment lien of Bounds Realty was satisfied and cancelled; the Motion to Lifty Stay filed by BankPlus was dismissed, the Motion to Lift Stay filed by MDOT was granted, so that the eminent domain case could go forward; the Debtor's appeal of the summary judgment in favor of Bounds Realty was dismissed before the Supreme Court of Mississippi and perhaps, most importantly, the Motion to Dismiss the case was resolved, favorable to the Debtor, so that the case remained "in" bankruptcy. Mr. Henderson is making no effort to unwind those parts of the settlement where money flowed to BankPlus or Bounds Realty and their liens were cancelled (TR, pp 26, 27). The Order also resolved full and final settlement of all claims of the Debtor against BankPlus and/or Bounds Realty and/or GH and their respective representatives (TR, p 27). The parties to the Order also agreed that the Order contemplated that payments to BankPlus and Bounds Realty, and the GH purchase price, would fully satisfy BankPlus and Bounds Realty's claims (TR, p 28). The Order also provides that both Debtor and GH recognized and agreed the purchase price was only a portion of the consideration exchanged between GH, the Debtor and Bounds Realty. (TR, p 29). The Order, as Mr. Henderson noted, was signed by Robert Rex McRaney, attorney for the Debtor, Craig Geno, attorney for Bounds Realty, Charles Hughes, attorney for Gluckstadt Holdings, Bill Leech for BankPlus and Alan Purdy for Mississippi Transportation Commission. (TR, p 31). The Order provides that it was a final judgment as contemplated by the applicable Bankruptcy Rules (TR, p 31; T-2). No appeal was taken from the Order.

## ARGUMENT

**1. The Order should be enforced - and enforced specifically as to the parties to the Order.**

The Order of March 1, 2013, actually accomplished two "sets" of agreements; but both sets are inextricably intertwined. First, the Order resolved many contested matters which had the case completely "hung up" as a result of the positions taken by Bounds Realty: the BankPlus Motion for Relief from the Automatic Stay (noticed to the entire creditor body but objected to only by the Debtor and Bounds Realty) was fully resolved and BankPlus was paid in full; the MDOT Motion for Relief from the Automatic Stay (noticed to the entire creditor body and objected to only by the Debtor and Bounds Realty) was resolved, the stay lifted and that eminent domain litigation was allowed to go forward which produced a $3.2 million judgment and cash for the estate; Bounds Realty was paid in full; the liens of BankPlus and Bounds Realty were released; the Bounds Realty Motion to Dismiss (objected to only by the Debtor but noticed to the entire creditor body) was also resolved and the case was allowed to remain in bankruptcy. It is not unusual for automatic stay motions that have been noticed to the entire creditor body to be resolved without additional notice and that was what happened here. Moreover, it is not unusual for motions to dismiss to be resolved at the hearings on those motions, without further notice, when those motions have been noticed to the entire creditor body and the movant, debtor and any other entity that objected to the motion to dismiss approve the settlement. After all, any settlement short of granting the Motion to Dismiss in this case was of substantial benefit to the Debtor - and no other party objected to it.

In reliance upon the Order, a number of significant results occurred, none of which can feasibly be "reversed" or "unwound" and none of which the Trustee is attempting to unwind: (a)

BankPlus was paid in full; (b) Bounds Realty was paid in full; (c) the MDOT litigation was allowed to go forward; (d) the case was allowed to remain in Chapter 11; (e) the Debtor's appeal of the grant of the Bounds Realty judgment before the Mississippi Supreme Court was withdrawn; (f) liens were released and certain of the parties agreed that the settlement was in full satisfaction of claims against one another. The Trustee has not sought to set aside any of those results and they cannot, as a practical matter, be unwound at this late stage even if the Trustee attempted to do so (and he has shown no inclination in that regard).

At the hearing on the Motion to Dismiss, no issue was raised as to any requirement that those portions of the agreements that were reached and were to be executed, immediately, should be noticed out since all of the "players" were at the table. Also, automatic stay motions carry with them time limits for decisions as do motions to dismiss in Chapter 11 cases. Accordingly, those executed provisions of the settlement are, for all practical, legal and technical reasons and purposes, intact and not capable of being unwound. The parties to the Agreed Order (including the Debtor-in-possession, the Chapter 7 Trustee's predecessor in interest) agreed to it, relied upon on it, money was paid in reliance upon it, liens were released and the eminent domain litigation was allowed to go forward. Those provision of the Order are inextricable intertwined with the other provisions that require the Debtor-in-possession (and now the Chapter 7 Trustee) to specifically perform (again, subject to notice and a hearing and the objections of other creditors and parties in interest - but not the Trustee).

The rest of the agreements noted in the Order are agreements that are binding on all the parties to the Order, subject only to Court approval after notice and a hearing. As the Trustee noted (and as has been held in hundreds of cases), the Trustee steps into the shoes of the debtor-in-possession when a case is converted from Chapter 11 to Chapter 7 (TR, p 22). There is no

question but that the parties to the Order (Bounds Realty, BankPlus, MDOT, the Debtor and GH) agreed to be bound by all terms of the Order - not just those that were more beneficial to them than others. The Trustee should also be bound. But the Trustee has never filed the motion that the Order contemplates - that is, a sale of the affected real property to GH according to the terms that were reached in the Order. That motion has never been filed - but should have been - and it is only subject to the objections of creditors and parties in interest other than the Trustee. The motion of the Trustee that initiated this contested matter is exhibit T-6. It specifically provides, in paragraph 8.4 that the opening bid for the relevant real property is for $612,500 to GH, but it goes on to provide that the Trustee would accept any bid or combination of bids that he believes are higher and better bids and then the GH offer would be rejected. He states: "the Trustee is under no obligation to sell to GH unless the Opening Bid of GH is the highest and best bid . . ." (T-6 at p 3, ¶ 8.4).

There is no issue, nor any argument, that the parties (and the parties here included the Debtor, who is the Trustee's predecessor in interest, GH, BankPlus, MDOT and Bounds Realty) reached an agreement, there was consideration for the agreement, all parties relied upon the agreement with respect to the transfer and payment of money, release of liens, dismissal by the Debtor of a pending Mississippi Supreme Court appeal (TR, pp 29, 30), lifting of the automatic stay and foregoing claims. As previously stated, those noted portions of the Order (as to which GH is a signatory) are agreements that were fully executed. The only executory portion of the Order that remains to be concluded is the Debtor's obligation (and now the Trustee's) to honor the remaining portion of the Order that requires Court approval and that is the portion requiring the sale of the 7.65 acres of real estate to GH under certain specified conditions - again, subject to Court approval after notice and a hearing.

The cases are unanimous in holding that settlements in bankruptcy are favored.  Everyone knows those cases and has read them.

A somewhat similar factual situation was before the Court in *In re Managed Storage International, Inc.*, 2012 WL 5921723 (Bankr. D. Del. 2012).  In that case, the debtor-in-possession reached a settlement of certain preferential transfer litigation.  A Stipulation was filed with the court reflecting the settlement and releases were exchanged.  Some time after that, the Chapter 11 case was converted to a case under Chapter 7 and a Chapter 7 Trustee was appointed.  After the Trustee was appointed, he filed an adversary proceeding against Avnet, Inc. (one of the released parties in the Stipulation) seeking to avoid preferential transfers.  Avnet filed a motion to dismiss the preference action, arguing it obtained a release from the debtors at the time they were in Chapter 11 and prior to the conversion.  In ruling upon the motion to dismiss of Avnet, Bankruptcy Judge Walrath first found that it is a well settled principal that a "Chapter 11 debtor-in-possession can enter into a binding agreement with a secured creditor, which will be enforceable against a subsequently appointed Chapter 7 trustee." [Citations omitted], 2012 WL 5921723 at *3(1).  Judge Walrath also noted that in order to overcome a general rule that a prior agreement by a debtor-in-possession binds the Trustee, the Trustee must present evidence supporting a valid reason to ignore that rule, relying upon *Begier v. American Express, Inc. (In re American International Airways, Inc.)*, 75 B.R. 1023, 1023 (Bankr. E.D.Pa. 1987), which held that the Trustee must present evidence of factors, which may include equitable factors, as to why he should not be bound by the debtor-in-possession's pre-appointment court-approved Stipulation.  Judge Walrath went on to rule that there was no prejudice to the estate and there was no lack of consideration so the releases were binding upon the Trustee in that regard.

Notice was also a significant issue in Judge Walrath's decision. While the opinion she wrote is somewhat convoluted with respect to exactly what notice was given, it is clear that the notice was not the subject of a typical Rule 9019 motion and was not filed giving 21 days notice to creditors in the case. She noted that even though it was not clear that the unsecured creditors committee had advance notice of the terms of the Stipulation, which included a release, she found that notice was appropriate under the circumstances, noting that the settlement was within the sound discretion of the Bankruptcy Court and that the Bankruptcy Court has the authority to shorten the notice period under Rule 9019. 2012 WL 5921723 at *5(c), *6. Interestingly, she also stated as grounds to support her decision another consideration: "Even if advance notice of the Stipulation was insufficient, the Committee (or any other party in interest) had notice of the entry of the Order approving the Stipulation and had the opportunity to move for relief from the Order pursuant to Rule 60(b) or to appeal the Order." 2012 WL 5921723 at *6.

Here, all creditors had notice of the Bounds Realty Motion to Dismiss, which could have resulted in a dismissal of the case, that would have allowed GH to purchase all of the assets of the estate for $2.5 million, including all of the real estate as well as the MDOT cause of action. In that scenario, there would "only" have been enough money to pay the BankPlus secured claims, the Bounds Realty secured claims, the real estate taxes, related costs and expenses, with around $500,000 left for other creditors (TR, p 43). Instead, the estate will get, if the entire settlement is approved: BankPlus paid in full, the Bounds Realty claim paid in full, $612,500 from GH, $3.2 million in MDOT judgment proceeds (less fees and expenses for special counsel to the Debtor) and very valuable consideration for the remaining thirty-one/thirty-two acres of real estate that are not included in the GH settlement. As was the case in Judge Walrath's opinion, the agreements reached in the case at bar were under circumstances that were not ideal

from the Debtor's standpoint - this was a classic *Phoenix Piccadilly/Little Creek* case - the

Debtor had no cash, no employees, no "business" operations, the Debtor was facing foreclosure

through the sheriff's execution sale literally minutes before the bankruptcy petition was filed, the

Debtor had no income or source of funding of a plan of reorganization and the case basically

involved a two party dispute between the Debtor and Bounds Realty (with GH serving as the

purchaser at the sheriff's execution sale). Moreover, as Robert McRaney, Debtor's counsel,

testified, the Debtor failed to comply with many of the requirements of the Bankruptcy Code of a

debtor-in-possession, he had trouble getting monthly operating reports and had to pay U.S.

Trustee fees out of his own pocket. Under the circumstances, which were certainly bolstered by

Mr. McRaney's testimony (TR, pp 49, 50), the Debtor was clearly in a bad way, and could have

lost practically everything if the case had been dismissed. The settlement, based upon the totality

of the circumstances, was very favorable for the Debtor.

Now, Judge Walrath's opinion was later reversed when it was appealed to the District

Court - *Burtch v. Avnet, Inc.*, 527 B.R. 150 (D.C. Del. 2015). There, the District Court found

that Judge Walrath correctly ruled that there was adequate consideration given to the debtors but

reversed her decision because adequate notice was not provided. 527 B.R. at 156.

Interestingly, the District Court also found that the Bankruptcy Court did not evaluate the

propriety of the compromises made in the Stipulation or Release at least to the extent that they

extended beyond resolution of the objections to a motion that was before the trial court. Here,

the fully executed and accomplished part of the agreement that allowed BankPlus and Bounds

Realty to be paid in full, resolved the Motion to Dismiss, allowed the MDOT litigation to go

forward and kept the case in a Chapter 11 case resolved motions that had been noticed to all

creditors and parties in interest. There was no question that BankPlus was owed what it was paid

and it was entitled to it; while there was some question as to the Bounds Realty claims, those

were resolved as between the Debtor and Bounds Realty and the Mississippi Supreme Court

appeal was dismissed; the MDOT litigation was allowed to go forward to the benefit of all

creditors and the Motion to Dismiss, which if granted would have been disastrous to the estate,

was denied.  Those portions of the Order required no further notice because not only were the

affected parties all signatories to the agreement, the contested matters giving rise to the Order had

been noticed to all creditors and no party objected other than the ones that were signatories to the

Order, which included GH.  As everyone agrees, the additional portion of the Order - the sale of

the real estate to GH - should have been noticed by the Debtor-in-possession, but was not and,

under applicable authority, should be noticed by the Chapter 7 Trustee - and it has not been as of

yet.    Even more compelling authority to support the position of GH is found in *PRLP 2011*

*Holdings LLC v. Manuel Mediavilla, Inc., et al.*, 568 B.R. 551 (1st Cir. BAP 2017).

While the facts in *PRLP* are somewhat complex and at least a little bit convoluted, the

Bankruptcy Appellate Panel's opinion on settlements in bankruptcy is extremely well reasoned

and sets forth, in detail, the "law" in this area.

Apparently, the Bankruptcy Court had ruled that the settlement agreement at issue

was not enforceable because it lacked certain signatures and it had not been approved by the

Court.  The Bankruptcy Appellate Panel observed:

> ". . . [I]n the Panel's view, this ruling ignored the settling parties'
> duty to proceed with a request for approval of the Settlement
> Agreement in accordance with applicable Bankruptcy Rules, and
> misconstrued the difference between the existence and
> enforcement of contracts.  Federal law, namely the Bankruptcy
> Code and the Bankruptcy Rules, apply to the enforcement of the
> Settlement Agreement, given the Debtors' pending chapter 11
> cases.  Indeed, the Settlement Agreement itself set forth the
> mechanisms for its implementation through a sale under § 363 and

> confirmation of a plan under § 1129.  Furthermore, Puerto Rico
> law also imposed on the Debtors the obligation to proceed in good
> faith with the Settlement Agreement. "Puerto Ric[o] law imposes
> the duty of good faith performance on contracting parties."  Adria
> Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 108-09 (1st Cir.
> 2001) (citing An-Port, Inc. v. MBR Indus., Inc., 772 F.Supp. 1301,
> 1314 (D.P.R. 1991) ("The requirement of good faith between the
> parties in a contract ... must guide all contacts between the
> contracting parties during the existence of the relationship.");
> AMECO v. Jaress Corp., 98 P.R.R. 820 (1970) (contracting parties
> have obligations by law that extend "to cover not only what has
> been expressly stipulated, but also the consequences which,
> according to their nature, are in accordance with good faith"); P.R.
> Laws Ann. tit. 31, § 3375 (1990))."

The law in Mississippi with respect to enforcement of settlement agreements, and the good faith

requirement contain therein, is similar to the law in *PRLP*.  *In re Hyperion Foundation, Inc.* 2009

WL 3633878 (S.D.Miss. 2009).  In that case, the debtor contended it reached a settlement with its

landlord.  The landlord claimed the settlement was not complete and there was no meeting of the

minds.  In the bankruptcy case, the debtor filed a motion to enforce the settlement.  Judge Olack

found an agreement had been reached, and generally discussed the applicable law of enforcing

them:

> "'Settlement agreements have always been a favored means of
> resolving disputes' in the Fifth Circuit.[4]  *Thomas v. State*, 534 F.2d
> 613, 615 (5th Cir. 1976).  It also is clear that 'settlement
> agreements, when fairly arrived at and properly entered into, are
> generally viewed as binding, final, and as conclusive of the rights
> of the parties as is a judgment entered by the court.'  *Rodriguez v.
> Via Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986) (citing
> *Thomas vs. Louisiana*, 534 F.2s 613 (5th Cir. 1976) and *Cia Anon
> Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967)).
> Settlement agreements may not be repudiated '[a]bsent fraud,

---

[4] For a discussion of the requisites of enforcing a settlement agreement in a bankruptcy
case, see Neil P. Olack & Kristina M. Johnson, *Compelling Settlement Agreements in Bankruptcy
Cases: Holding Their Feet to the Fire*, 18 Miss. C.L.Rev. 427 (1998).  At the Hearing, counsel
for the parties agreed that this article reflects the current state of the law on this issue.

deception, coercion or overreaching....' *Rodriguez*, 802 F.2d at 129 (citing *Strange v. Gulf & S. Am. Steamship Co., Inc.*, 495 F.2d 1235 (5th Cir. 1974)).

In light of these principles, the bankruptcy court has the inherent power not only to recognize and encourage settlements, but also to enforce such agreements when reached by the parties. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). Such power to recognize and enforce settlements supports what the Fifth Circuit has described as 'three important goals encouraged by our judicial system: voluntary settlements of disputes, the enforcement of agreements according to the objective intent of the parties, and an end to litigation.' *Id.* at 450.

He also noted that when a federal court is faced with the issue of enforcing a settlement, it must determined whether an agreement was reached under applicable state law. *Equity Mgmt. II Corp. v. Carroll Canyon Assoc. (In re: Carroll Canyon Assoc.)*, 73 B.R. 236, 238 (S.D.Miss. 1987).

Judge Olack goes on to note the rule in Mississippi about enforcing settlement agreements:

"Mississippi has long recognized that settlements are contracts, which are enforceable according to their terms. *Parmley v. 84 Lumber Co.*, 911 So.2d 569, 572 (Miss. Ct. App. 2005) (citing *McManus v. Howard*, 569 So.2d 1213, 1215 (Miss. 1990)), *cert. denied*, 920 So.2d 1008 (Miss. 2005); *Middlesex Banking Co. v. Field*, 84 Miss. 646, 37 So. 139, 149 (Miss. 1904) (Truly, J., specially concurring). It is elementary that in order for there to be a settlement the minds of the parties must meet as to the material terms of the agreement. *Parmley*, 911 So.2d at 572 (quoting *Hastings v. Guillot*, 825, So.2d 20 (Miss. 2002)). No 'meeting of the minds" can occur until the terms of an offer are accepted. Acceptance, however, can occur in a variety of different ways and is based upon the objective manifestations of the parties and not upon their subjective, but unmanifested intent. See, e.g., *In re Estate of Davis*, 832 So.2d 534, 537 (Miss. Ct. App. 2001). Mississippi law places the burden of proving that there was a 'meeting of the minds' on the party claiming the benefit of the settlement. *Warwick v. Matheney*, 603 So.2d 330, 336 (Miss.

1992).  For a settlement to exist it is not necessary that a release be
signed.  *Parmley*, 911 So.2d at 572.

209 WL 3633878 at *3.

Although notice was not an issue in *Hyperion*, Judge Olack did provide (after finding a

settlement had been reached and there was a meeting of the minds) that: "The Debtor must notice

the Settlement Proposal pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and

complete whatever documents are necessary to evidence the settlement agreement."  209 WL

3633878 at *5.

Under *Hyperion*, if the settlement agreement was binding upon the non-debtor, it was, by

clear implication, binding upon the debtor, subject only to being noticed to the remaining creditor

body.  And Judge Olack would have enforced the settlement against the debtor as well.

Here, the "main" creditor body (which was composed of the case's active "players" in the

Order), all approved the settlement agreement, executed and relied on it in substantial ways by

transferring significant funds, releasing liens and dismissing a Mississippi Supreme Court appeal.

The settlement binds all those parties and is binding upon the Trustee, subject only to the sale

feature being noticed out under Rule 9019 to the remaining creditor body that was not a signatory

to the agreement.  The answer of GH to the pending Motion seeks to require the Trustee to

properly notice a motion to sell the real property but with the limitations contained in the Order.

The 1st Circuit Bankruptcy Appellate Panel in *PRLP* went on to discuss bankruptcy

application of motions to compel settlements:

> "Thus, a multi-step process governs the execution and enforcement
> of a settlement agreement in a bankruptcy case.  As in any other
> civil proceeding, first the parties execute an agreement.  Then, if
> one party to the agreement reneges, the other party may move to
> enforce it in an appropriate tribunal.  In a bankruptcy case, there is
> an additional step: the agreement must also be presented to the

> court for consideration after notice and an opportunity for a
> hearing. . . . [I]n this response, the Debtors essentially admitted to
> breaching their obligation to submit the Settlement Agreement to
> the bankruptcy court and request its approval.  As noted above, that
> argument is unpersuasive in view of the detailed provisions and
> procedures to effectuate and enforce it set forth in the Settlement
> Agreement."

We have essentially the same situation here.  The Trustee has declined to submit the

remaining, unexecuted portions of the Order that was entered by the Bankruptcy Court to all

"non-party" creditors and request its approval.  GH's response seeks to compel the Trustee to

accomplish what the Order and the law requires of him.

With respect to the issue of notice of settlements and compromises, the

Bankruptcy Appellate Panel of the 1st Circuit in *PLRP* observed:

> "The bankruptcy court also concluded that the Settlement
> Agreement was unenforceable because of the absence of
> compliance with Bankruptcy Rules 9019 and 6004 and, in
> particular, the absence of notice.  "Courts are divided on the issue
> of whether an agreement is binding on the parties pending approval
> by the Bankruptcy Court." In re Filene's Basement, LLC, No. 11-
> 13511 (KJC), 2014 WL 1713416, at &6 (Bankr. D. Del. Apr. 29,
> 2014) (quoting Pineo v. Turner (In re Turner), 274 B.R. 675, 679
> (Bankr. W.D. Pa. 2002) (collecting cases and recognizing that
> some courts reason that the absence of court approval does not
> mean that the parties did not reach an agreement, while other
> courts have determined that an agreement cannot be binding until
> court approval)); see also Rinehart v. Stroud Ford, Inc. (In re
> Stroud Ford, Inc.), 205 B.R. 722, 724 (Bankr. M.D. Pa. 1996)
> (same).  We conclude that the better-reasoned view is that the
> absence of court approval is only a bar to enforceability; it does not
> equate to the lack of the "existence" of the agreement between the
> parties as the bankruptcy court erroneously determined. See In re
> United Shipping Co., No. 4-88-533, 1989 WL 12723, at *5 (Bankr.
> D. Minn. Feb. 17, 1989) ("the absence of court approval does not
> mean that the parties did not agree to the settlement.  It only
> means that the court has not yet approved it.  The considerations a court
> looks at in approving a settlement are entirely different than

whether or not there was an agreement at all.").[12]  The bankruptcy court's ruling to the contrary confounded the two inquiries in the analysis and elevated form over substance, essentially permitting the Debtors to evade their contractual obligations under the Settlement Agreement.

In sum, the bankruptcy court's decision to implicitly deny PRLP's Motion to **Enforce Settlement** was an abuse of discretion because it was premised upon the erroneous legal conclusions that the **Settlement Agreement** was not binding between the parties, and thus "non-existent," and that the parties were not obligated to file the Transfer Motion, Stipulation, and Plan Incorporating **Settlement** with the bankruptcy court pursuant to the **Settlement Agreement**.  The court failed to distinguish between the enforceability of the Settlement Agreement, which was a binding contract among the parties, and the need for court approval of the Settlement Agreement following adequate **notice** and an opportunity for a hearing which would be *573 binding upon the bankruptcy estate upon court approval.  In other words, enforcement of the Settlement Agreement between the parties with the requirement to seek court approval is distinguishable from the actual approval of the Settlement Agreement and its concomitant undertakings in conjunction with an amended plan after **notice** and opportunity for objections and a hearing.  See In re Turner, 274 B.R. at 675."

That ruling is exactly what GH has been trying to get the Trustee to do for many years.

The agreement (or at least that part which is unexecuted) between the parties should have been

the subject of a motion to sell outside the ordinary course of business by the Debtor-in-

possession.  Mr. McRaney had no explanation as to why he did not accomplish this (TR, pp 53).

---

[12] Contra In re Sparks, 190 B.R. at 845 ("The settlement agreement here involved disposition of estate assets and its terms were to be incorporated into a plan of reorganization.  Sections 363 and 1129 are the substantive provisions of the Bankruptcy Code requiring a hearing and court approval; Rule 9019 merely sets forth the procedure for approving an agreement to settle or compromise a controversy.  The creditors of this estate had to be notified of the agreement and this Court had to approve it before it became enforceable.").  We conclude that the decision in Sparks is factually distinguishable because the debtors in that case incorporated the terms of an agreement into a plan that they filed with the bankruptcy court before they sought to repudiate the agreement.  See id. at 843.  Second, the bankruptcy court in that case failed to distinguish between the debtors and the bankruptcy estate in its enforceability analysis.  See id. at 844.  And third, the law applicable to the agreement in this case imposes a duty of good faith and fair dealing.  See Adria Int'l Grp., Inc., 241 F.3d at 108-09.

Now that the ball is in the Trustee's court, he should be compelled to comply with the settlement that his predecessor reached, file the correct motion and seek court approval of it.

The Bankruptcy Appellate Panel of the 1st Circuit in *PRLP* goes on to discuss some of the practical and policy provisions behind its decision:

> "The Debtors did not have a unilateral right to repudiate their Settlement Agreement prior to a court determination of whether to approve the settlement, particularly where the Debtors' repudiation was triggered solely by the bankruptcy court's December 30, 2015 Decision. In these cases, the Debtors had a contractual and good faith obligation to submit the parties' compromise to the court for consideration and failed, without reasonable justification, to do so. To permit the Debtors to breach their agreement with PRLP without consequence would defeat the principle that settlements are favored "as a preferred alternative to costly, time-consuming litigation." See Fid. & Guar. Ins. Co., 541 F.3d at 5.
>
> Moreover, permitting the Debtors to renege in the circumstances present in these cases would sanction a breach of the covenant of good faith performance of the contract. As noted by the court in Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.), if a party could unilaterally withdraw from a settlement agreement, he or she could strategically enter a settlement agreement and effectively "stay" the proceedings against him and repudiate on the eve of court approval without consequence. 388 B.R. 386, 395 (M.D. Fla. 2008). Condoning such strategy wastes the time and resources of the bankruptcy court and the time and resources of the parties who may have spent hours and substantial sums of money in negotiations, contract drafting, and contract execution. It also places the estate in a precarious position when negotiating settlements. Contracting parties are entitled to a reasonable measure of assurance that their settlement agreements are valid and effective even though their performance obligations have yet to arise (as a result of the need to obtain court approval). The requirement of bankruptcy court approval of a compromise does not create a right of unilateral repudiation pending the court's consideration of the proposed compromise. See id. To hold otherwise would be contrary to the principles of contract formation and contrary to the strong public policy favoring the settlement of disputes and the orderly administration of bankruptcy cases.

The bankruptcy court's ruling ignored significant obligations of the Debtors and improperly emphasized the requirements of additional notice and court approval of the Settlement Agreement. It also placed too much weight on the presentation of ancillary documents to effectuate the terms of the Settlement Agreement, when the principal terms were already set forth in the Settlement Agreement. The Debtors were obligated to file a Stipulation with the bankruptcy court, together with a request for its approval, as well as the Plan Incorporating Settlement and the Transfer Motion, an implicit if not an express recognition that: (1) the purpose of the Debtors' cases was the restructuring of the PRLP loan; and (2) PRLP was the primary creditor in the chapter 11 cases in which other creditors did not actively participate. The fortuity of the December 30, 2015 Decision did not absolve the Debtors of their obligations under the Settlement Agreement.

Lastly, the bankruptcy court's reliance on the absence of notice is overstated. The parties agreed to a shortened notice period of seven days for approval of the Stipulation, the Transfer Motion, and *574 the Plan Incorporating Settlement. At oral argument, counsel for the Debtors acknowledged that, with respect to all creditors other than PRLP, the treatment of creditors under the Plan Incorporating Settlement, as contemplated by the Settlement Agreement, would treat creditors identically. Accordingly, in view of the limited number of claimants, the absence of creditor involvement in the Debtors' cases other than by PRLP and CRIM, and the likelihood that the treatment of any other classes of claims would not change under an amended plan, the bankruptcy court's focus on notice to deny enforcement of the Settlement Agreement was an abuse of discretion.

Finally, we reject the Debtors' argument that their fiduciary obligation as chapter 11 debtors-in-possession required a re-examination of their position vis á vis the Settlement Agreement following the issuance of the December 30, 2015 Decision. As fiduciaries, the Debtors should have complied with the Settlement Agreement, at least until a time when, after notice and opportunity for hearing, the court declined to approve the agreement. That did not happen here." (Emphasis added).

It is hard to amplify or improve upon the language of the Bankruptcy Appellate Panel

stated above. The emphasized part of it is directly on point here in light of the very limited

participation by VCR creditors who were not parties to the Order. GH will comment, however,

upon the *PRLP* Court's rejection of the debtors' argument that their fiduciary duty required a re-examination of their position. Although the Trustee here has not stated that position in so many words, essentially it is his position that he has to also re-examine the solemn agreement of a predecessor-in-interest. And this was a predecessor-in-interest under extreme pressure to somehow get out from under the *Phoenix Piccadilly/Little Creek* cases that squarely applied to it. Mr. McRaney explained that he was concerned about that particular issue, both from the trial court perspective and from an appellate court prospective (TR, pp 50-53). His assessment was appropriate under the circumstances presented in light of the *Phoenix Piccadilly/Little Creek* cases and, perhaps just as importantly, the circumstances presented to him with the lack of performance of a "difficult" client. The Trustee's Monday morning quarterbacking, whether simply Monday morning quarterbacking with 20/20 hindsight or some expansion of a perceived fiduciary obligation, should not be allowed to overturn a fair, reasonable, fully negotiated and appropriate settlement agreement reached many, many years ago that avoided a disastrous consequence for the Debtor and its estate - a consequence that would have deprived the creditors (such as they are that remain) of, literally, millions of dollars.

Speaking of parties-in-interest, Judge Walrath's observation in her decision about lack of an appeal is particularly apt here. Not only was the Debtor's estate representative (Mr. Rai) present as an estate representative, he is also a member of the Rai family that purportedly owns the Debtor equity. Mr. Rai expressly approved the agreement based upon the Court's questioning and, as an aside, was the decision-maker who, at the hearing on the Motion to Dismiss, directed Steve Smith, counsel for VCR, that he should dismiss the appeal before the Mississippi Supreme Court involving the Bounds Realty summary judgment that it obtained in the Circuit Court of Madison County. Thus, a Rai family member was present at the hearing, he

lead the recitation of the settlement agreement into the record and voiced no objection to it, but affirmed it was the agreement. Moreover, there were no appeals of the Order and it is long since become final and non-appealable; subject, of course, to the requirements that the Trustee must notice out the real property sale aspect of the agreement. Several other courts have also reviewed this same issue and ruled that a debtor's agreement to compromise is binding upon all parties to the agreement pending the bankruptcy court's approval of the agreement. *Cotton v. Banksouth (In re Cotton)*; 136 B.R. 888, 890 (M.D.Ga. 1992); reversed on other grounds, 992 F.2d. 311 (11th Cir. 1993), *White v. C.B. Hannay Co. (In re Lyons Transportation Lines, Inc.)*, 163 B.R. 474, 476 (Bankr. W.D.Pa. 1994), *United Shipping*, 1989 WL 12723, at *5. The *United Shipping* court ruled that it must look to the intent of Rule 9019 on the issue and determined that the rule was protect other creditors (not parties to the agreements) against bad deals made between settling creditors and the debtor and to encourage settlement. The authority relief upon by the trial court is factually distinguishable here because none of those cases carried with them the pervasive and comprehensive settlement that was reached here. There was no substantial reliance by the parties in those cases whereby significant sums of money transferred hands and were paid, liens were released, appeals were dismissed, and eminent domain litigation was allowed to go forward. Most importantly, however, the motion to dismiss (that Robert McCraney, counsel to the Debtor was so concerned about) was dealt with and denied, so that the Debtor was allowed to go forward as a Chapter 11 (now a Chapter 7) Debtor. Otherwise, the case very well may have been dismissed and GH/Bounds Realty would have returned to their "state court" positions of executing upon the Bounds Realty judgment with disastrous results for the Debtor to follow. GH has always understood that the agreement that was reached would require a subsequent motion to sell for it to get accomplished, and it understood that was a risk;

but a risk it was willing to undertake but the Debtor-in-possession (now the Trustee), a party to a solemn, heavily negotiated and comprehensive settlement should not be allowed to "get out of" that agreement without fully complying with its terms. If non-Debtor/non-Trustee parties object to the appropriate motion that should follow the Order, then so be it and the Court will have to deal with those. In the meantime, GH should be afforded the benefit of its bargain (and the bargain of the Debtor-in-possession, BankPlus, the eminent domain condemnation authorities and other creditors and parties in interest who benefitted, either directly or indirectly, in a solemn settlement that was heavily negotiated with competent counsel and sophisticated parties).

　　　　2. **GH has standing. In the event this Honorable Court desires to review the standing issues (not appealed by the Trustee), GH submits this portion of the brief on that issue.**

　　　　As noted in Issue 1, the Trustee and GH have a binding agreement as between themselves, subject only to notice and a hearing and Court approval. As such, GH is not merely a disappointed bidder - it has a contract that has been breached and as to which it seeks specific performance.

　　　　Also, as noted in Issue 1, purchasers of assets in bankruptcy cases have the ability to move to compel settlement, according to the *Hyperion* decision, which means they certainly have standing. In the event this Honorable Court adopts the holding in *PRLP*, as well as *Hyperion*, GH clearly has standing to defend against the current Motion and to require the Trustee to honor his agreement with GH.

　　　　The case of *In re Holwerda*, 428 B.R. 730 (Bankr. Mich. 2010), granted a buyer who had an agreement with the Trustee to purchase estate assets, but who was "outbid" in a separate sale motion, standing to object to the second sale motion. In *Holwerda*, City Realty Corporation

("City") had reached an agreement with a Chapter 7 Trustee to purchase certain LLC interests of

the debtor.  City became concerned that the debtor was committing waste with respect to specific

assets of the LLC and the Trustee agreed to postpone the closing of the transaction on several

occasions.  Eventually, the Trustee received a second offer for the LLC interests from another

party for more consideration, release of claims and waiving an avoidance claim with respect to a

pre-petition transfer of a boat that caused it to be distinguished from the first sale.  City objected

to the second sale, and the Trustee argued that City lacked standing to object to it because it was

merely a disappointed bidder.

> The Court held otherwise:

> > "Third, the court acknowledged that City had standing to complain,
> > as the court-approved buyer in the first transaction, not merely a
> > disappointed bidder.  Citations omitted.  However, as the court
> > explained at the hearing, its approval of the Second Sale Motion
> > did not affect City's right to require the estate to answer in
> > damages, under a contract or tort theory, upon proper proofs.  Such
> > a claim for relief might take the form of an adversary proceeding or
> > perhaps an administrative claim (the court does not now decide the
> > precise procedure for requesting such relief), but the forum for any
> > litigation against the Trustee as the representative of the estate will
> > be the United States Bankruptcy Court."

428 B.R. 732, 733.

As a result, there can be little doubt that GH is much more than a mere disappointed or

disgruntled bidder - it has an agreement with the Trustee which needs to be prosecuted pursuant

to a proper motion to sell in accordance with the terms and conditions of the Order.  In the event

this Court determines that GH is entitled to that kind of relief subject, again, to notice and a

hearing and eventual Bankruptcy Court approval, after remand, standing is conferred.  Under

*Holwerda*, it also has a claim for damages - but it prefers to get the real benefits of its bargain -

the contemplated sale motion.  GH also participated in the pre-petition settlement with Bounds

Realty (TR, pp 37-41, 60-63), and extensively in the Bankruptcy Court (TR, pp 64, 67).  GH

even proposed a draft sale motion for Mr. McRaney (TR, p 72); but it was never filed.

### 3. Equitable Considerations.

It is a universal rule that settlements in bankruptcy courts are favored.  The cases in that

regard are unanimous.  This settlement was more than fair and equitable to the Debtor, the

creditors and parties in interest who participated in this settlement and, ultimately, even those

few creditors who did not participate in the settlement for all the reasons stated in this brief and

for all the reasons that are evident.

But there is more at stake here than a settlement in some isolated case.  As some of the

cases in this brief have held, allowing a debtor (and now the Trustee who succeeded the Debtor)

to renege on a settlement - especially one like the one here that has been partially executed with

money flowing and liens being released - goes against what all of us have learned about

bankruptcy - that settlements are favored.  Not only are settlements favored in bankruptcy, so is

the enforcement of them.

But for the efforts of GH, who was working closely with Bounds Realty (TR, pp 41-43,

62-66), the settlement would not have occurred, and who knows where this case would have

ended up, especially considering the mandate of *Phoenix Piccadilly/Little Creek* the facts of

which are very similar to the facts here.

Moreover, the *PRLP* case tells us that some sort of perceived fiduciary obligations on

behalf of a debtor-in-possession or Trustee to review a settlement, based on alleged changed

circumstances, is ill advised because that would damage the integrity of the settlements that we

have all come to know and believe in the bankruptcy courts.  Solemn agreements, such as those

made here, should be enforced.  This is particularly appropriate in this case when the settlement

was more than fair and equitable to the Debtor, and brought, literally, millions of dollars to the bankruptcy estate and its creditors, including those who were not parties to the Order.

Allowing trustees to renegotiate settlements, and abdicating their duties to comply with the terms of a prior Order that was fully and fairly negotiated, is particularly unfair to GH in this instance, because it was the driving force behind the settlement that was reached.  And, the failure of the Debtor to file a sale motion was/is not GH's fault.

**CONCLUSION**

The Order is a binding agreement by, between and among the parties thereto, including the Trustee as successor to the Debtor-in-possession.  It was a fully negotiated, more than fair and equitable settlement which brought millions of dollars to the bankruptcy estate and creditors who were not parties to the agreement.  It should be enforced by the Trustee because he is bound, as a party to the Order since he is the Debtor-in-possession's successor, to properly pursue the correct motion to sell with the limiting conditions contained in the Order.  In that event, creditors or parties in interest who are not part of the prior Order will have their opportunity to convince the Court that it is an unfair settlement, in the event of reversal and remand.

Accordingly, GH respectfully urges the Court to reverse the Bankruptcy Court's decision.

Respectfully submitted, this the 11th day of December, 2017.

GLUCKSTADT HOLDINGS, LLC

By Its Attorneys,

LAW OFFICES OF CRAIG M. GENO, PLLC

By:/s/ Craig M. Geno
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Bounds Realty - VCR I Bkcy\US District Court\Pleadings\Appellant Brief 12-10-17.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via email transmission and/or U. S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Derek A. Henderson
derek@derekhendersonlaw.com

THIS, the 11th day of December, 2017.

/s/ Craig M. Geno
Craig M. Geno